## Hogg v. Caudill.

(Decided April 24, 1934.)

HOGG & MOORE for appellant.

J. WOODFORD HOWARD, J. L. HAYS and E. D. STEPHEN-SON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

J. H. Hogg was the Republican nominee for the office of sheriff of Letcher county and William H. Caudill was the Democratic nominee for the same office at the November election, 1933. The canvass of the returns by the board of election commissioners accorded to Hogg 3,969 votes and to Caudill 4,062. A certificate of election was issued to Caudill.

Hogg instituted in the Letcher circuit court, this action contesting the election of Caudill, challenging the votes in three precincts, Fleming, East Jenkins, and West Jenkins. It should be observed that neither Hogg

nor Caudill intimate or insinuate any wrongdoing or bad faith on the part of the election officers in the conduct of the election in either Fleming, East Jenkins, or West Jenkins. In Fleming precinct the ballots were signed by one of the judges of the election and the name of the clerk was stamped on the back of each ballot with a rubber stamp. In East Jenkins precinct the poll was not opened until 7:50 o'clock a. m. central standard time. The delay was due alone to the fact the primary election ballots had not been removed from the box. The election officers, on discovering the presence in the box of these ballots, carried the ballot box to Jenkins where the election commissioners were assembled, and, with a deputy county court clerk who had the keys to the box, removed them, then returned the box to East Jenkins precinct and opened the poll. The election officers conceived it to be their duty to hold the election ten hours in order that the electors be not deprived of their right of suffrage. The poll was allowed to remain open after 4, until 7 o'clock p. m. Hogg charges that 150 ballots for Caudill were cast in this precinct between 4 and 7 o'clock p. m. In West Jenkins the voting was permitted until about 4:20 p. m. Hogg charges the ballots in Democrat precinct were tampered with after the poll closed.

We shall only consider the grounds of contest as they concern East and West Jenkins and Fleming precincts, since Hogg only attacks them and Democrat precinct. It is conceded section 1482, Kentucky Statutes, 1933 Supplement, fixes the hour for closing the polls at 4 p. m. This section is mandatory, and the ballots cast after 4 p. m. are illegal. And on proper and sufficient allegations and proof they should be deducted from the candidate's vote for whom they were cast, where it is possible to determine who cast them and for whom they were cast.

The accepted rule is, although 20 per cent. or more of the actual vote of the precinct may have been cast after 4 o'clock, yet, if the names of the persons who cast the ballots after 4 o'clock can be ascertained, and it is possible to separate the legal from the illegal and to determine for whom they voted, the illegal should be deducted from the vote of the candidate for whom they were cast, and only the legal counted. See Watts v. Bowen, 250 Ky. 678, 63 S. W. (2d) 917; Muncy v. Duff, 194 Ky. 303, 239 S. W. 49; Hodges v. Murray, 240 Ky.

137, 41 S. W. (2d) 923; Land v. Land, 244 Ky. 131, 50 S. W. (2d) 518, 520; Caudill v. Stidham, 246 Ky. 174, 54 S. W. (2d) 654.

Although more than 20 per cent. of the ballots at both East and West Jenkins may have been cast after 4 o'clock, it was possible for either Hogg or Caudill to determine for whom they voted. The stubs of the poll books disclosed the names of the voters, and it could have been ascertained from the voters for whom the ballots were cast. Those cast after 4 o'clock being illegal, it was proper to compel the voters who voted after 4 o'clock to testify for whom they voted. Tunks v. Vincent, 106 Ky. 829, 51 S. W. 622, 21 Ky. Law Rep. 475; Duff v. Crawford, 124 Ky. 73, 97 S. W. 1124, 30 Ky. Law Rep. 323; Heitzman v. Voiers, 155 Ky. 39, 159 S. W. 625; Vansant v. McPherson, 155 Ky. 34, 159 S. W. 630. This being so, in order to entitle Hogg to have the votes cast for the recipient deducted from his total vote, it was indispensably necessary to set out in his pleading the names of the voters who voted after 4 o'clock and for whom they were cast, and support the allegations, if need be, by the testimony of the voters who voted after 4 o'clock. It has been uniformly held by this court except in Banks v. Sargent, 104 Ky. 843, and in Caudill v. Stidham, 246 Ky. 174, 54 S. W. (2d) 654 that in a contest where the ground was the casting of ineligible votes the pleader must name in his pleading the persons whose votes he questions and the ground upon which he bases his objection as well as the facts which rendered them ineligible and sustain his allegations by competent evidence. Thurman v. Alvey, 192 Ky. 341, 233 S. W. 749, and cases cited; Rice v. Jones, 250 Ky. 385, 63 S. W. (2d) 474; Combs v. Brock, 240 Ky. 269, 42 S. W. (2d) 323; Humbert v. Heyburn, 240 Ky. 405, 42 S. W. (2d) 538.

Insofar as Banks v. Sargent and Caudill v. Stidham, supra, are in conflict with the principles announced in this opinion, they are overruled.

Hogg, in his pleading and in the production of his evidence, complied with neither of these requirements. The trial court properly declined to apply the 20 per cent. rule in either precinct. His allegations and proof bringing the case within the 20 per cent. rule were not sufficient to fulfill the requirements of, or dispense with, the accepted rules of pleading and the introduction of his evidence, stated above.

The evidence in behalf of Hogg established that Eastern standard time was recognized by the community in which the election was held, and was adopted by the election officers. According to the Eastern standard time, 100 ballots were cast after 4 p. m. in East Jenkins precinct and about 18 in West Jenkins. It is not necessary to determine whether it was proper to close the polls in East and West Jenkins precincts by Eastern or Central standard time, for we have already indicated Hogg was not entitled to have the ballots cast for Caudill after 4 o'clock, although illegal, deducted from his total vote. It is agreed that Letcher county is within the zone of Central standard time as it has been fixed under the authority of "the Standard Time Act," March 19th, 1918, c. 24, 40 Stat. 450, 15 USCA sec. 261 et seq.; August 20th, 1919, 41 Stat. 280; March 4th, 1921, c. 173, 41 Stat. 1446, 15 USCA sec. 265; and March 3rd, 1923, c. 216, 42 Stat. 1434, 15 USCA sec. 264. The trial court correctly applied the rule fixed by this statute.

Section 1471, Kentucky Statutes, directs the clerk of the election shall "write his own name on the back" of the ballot "and hand it, thus indorsed, to the elector." As early as Bates et al. v. Crumbaugh et al., 114 Ky. 447, 71 S. W. 75, 76, 24 Ky. Law Rep. 1205, in construing this language of the statute, we said:

"While the provision may be regarded as mandatory with regard to the officer, and his failure may subject him to punishment, it shall not disfranchise the voter who is not guilty of the violation."

This rule is conceded by Hogg, but he contends it has been changed by later statutes. He argues:

"Now in order to meet that very situation and fill the gap that was signally lacking at the time of the decisions, the Legislature of Kentucky in 1930, fully cognizant of the existing law in Kentucky, wrote and commanded that there should be a duty on the part of the voter in casting his ballot. The Brock-Gilbert Law was enacted in 1930 [Laws 1930, c. 49, Ky. Stats. Supp. 1933, sec. 1468 et seq.]. Upon its enactment there was a sharp and drastic revolution as pertains to the conduct of elections in Kentucky. * * * It was to meet this very situation, we think, that this law was enacted; * * * a wholly different picture is now presented upon this question. * * * We say this because of the Act of 1930, section 1472.

* * * To hold that rubber stamp endorsement complied with the statute, we feel, would thwart the evident purpose of the Act [1930] of the Legislature. * * * We think that that statute is now amply sufficient to constrain the Court of Appeals of Kentucky to hold that Section 1471 is now certainly mandatory and the voter as well as the election officer is bound by it."

The Act of 1930, c. 49 (Ky. Stats. Supp. sec. 1468 et seq.), repealed and re-enacted sections 1468, 1472, 1481, and 1482 and 1483 and enacted section 1483A. In neither the title nor the body of the Act of 1930 is reference made directly or indirectly to section 1471 which directs the clerk of the election to "write his own name on the back thereof, and hand it, thus indorsed, to the elector." Nor does it contain any clause, phrase, or section relating to the clerk of the election. It is not susceptible of the construction it alters, changes, or varies section 1471 and the construction thereof as it has often been given by this court. The amendment of 1932 (chapter 82) to section 1460 (Ky. Stats. Supp. 1933, sec. 1460), requiring "there shall also be printed on the back of the ballot a blank line followed by the word 'judge,' and * * * one of the judges shall sign his name on such blank line and no ballot not so signed by one of the judges shall be counted by the canvassing board whose duty it is to certify the results of the election," manifests, for reasons satisfactory to it, the purpose of the Legislature to distinguish the signing of the judge's name from the act of the clerk when writing his name thereon. In this respect the language of section 1460 is mandatory, while that of 1471 is not mandatory, as it affects the counting of the ballot of the voter. Campbell v. Little, 251 Ky. 812, 66 S. W. (2d) 67, 69. The amendment to 1460 in no sense affects, alters, changes, or modifies section 1471. Section 1471 is unaffected by the Acts of 1930 and 1932. A comparison of our construction of section 1471, stated in Anderson v. Likens, 104 Ky. 699, 47 S. W. 867, 20 Ky. Law Rep. 1001; Bates v. Crumbaugh; Orr v. Kevil, 124 Ky. 720, 100 S. W. 314, 30 Ky. Law Rep. 761, 946; Snowden v. Flanery, 159 Ky. 568, 167 S. W. 893; Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69, with our construction of 1460 in Johnson v. Caddell et al., 250 Ky. 640, 63 S. W. (2d) 810, Wurts v. Newsome, 253 Ky. 38, 68 S. W. (2d) 448, and Pardue v. Webb, 253 Ky. 838,

— S. W. (2d) —, will disclose that the primary reason for distinguishing the act of the clerk in the writing of his name on the ballot as required by section 1471 and that of one of the judges of the election signing his name thereon, is the presence in section 1460 of these words, "and no ballot not so signed by one of the judges shall be counted by the canvassing board." See Campbell v. Little.

The fact that the amendment of 1930 to section 1472 imposes on the voter the duty "before marking such ballot * * * to examine the same to ascertain if the facsimile of the signature of the county clerk and the signature of the clerk of election, shows upon such ballot," does not amount to a legislative change of section 1471, nor of this court's previous construction of it. A provision of a statute may be repealed by implication, but not so amended or modified. "Repeals by implication are never favored, and will be sanctioned only when there is such irreconcilable conflict between the two that effect reasonably cannot be given to both acts. The implication of repeal of an act by a later one must be so clear as to be equivalent to an explicit declaration to that effect." Campbell County Election Commission v. Weber et al., 240 Ky. 373, 42 S. W. (2d) 511, 512.

It is conceded by Hogg that this court in Anderson v. Likens, 104 Ky. 699, 47 S. W. 867, 869, 20 Ky. Law Rep. 1001; Bates v. Crumbaugh, supra; Orr v. Kevil, 124 Ky. 720, 100 S. W. 314, 30 Ky. Law Rep. 761, 946; Snowden v. Flanery, 159 Ky. 568, 167 S. W. 893; Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69, held the failure of the clerk of the election to write his name on the ballot, as required by section 1471, should not be permitted to disfranchise the voter who was not guilty of violating the statute or other wrongdoing. It is hardly conceivable that, if a failure of the clerk of the election to write his name on the ballot will not disfranchise the voter, his use of a stamp to place his name thereon, instead of physically writing it, should be permitted to disfranchise the voter. A sentence in section 1471 seems to us fully to meet the objection to counting the ballots on which the name of the clerk of the election was stamped. It declares "no ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice." The failure to write, or the use of a rubber stamp to place, his name on the ballot falls within the acts of election officers

which the law classes as irregularities. In Campbell v. Little, we said:

"It is an established rule that irregularities of election officers, or even of the voters themselves, not violative of a mandatory statute, not affecting the merits of an election, will not invalidate the ballots of qualified voters, properly stamped by them and deposited in the ballot boxes as directed by the statute. Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69; Eversole v. Craft, 216 Ky. 500, 287 S. W. 965; Jones v. Steele, 210 Ky. 205, 275 S. W. 790."

The use of the rubber stamp to affix the name of the clerk did not invalidate the ballots.

The ballots in Democrat precinct were challenged on the ground they were tampered with after the poll closed. This attack is premised on the condition of the staple which held the lock of the ballot box, the vent itself, the condition of the ballots, and the circumstances occurring between the hour of closing the poll and the return on the next day of the ballot box to the county clerk's office by the election officers. The trial court was of the opinion the ballots in this precinct had been tampered with between the time of the close of the poll and their delivery at the clerk's office. Hogg concedes in his brief "there was every evidence of tampering on the ballots and on the box," and "the precinct must be disregarded." For this reason we devote no time to a consideration of this precinct.

It is apparent it is our view the finding of facts by the trial court and its conclusion of law as to East and West Jenkins and Fleming precincts are sustained by the record and entitled Caudill to the election certificate.

The judgment is affirmed on both the original and cross appeals.

Whole court sitting except Judge Thomas.